**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VICTOR SOWELL

Plaintiff,

- v -                                                    Civ. No. 9:13-CV-1482
                                                              (GLS/DJS)

STEVEN BULLIS, *Commissioner's Hearing Officer*,
*Upstate Corr. Facility*; L. HUBBARD,[1] *DOCCS Captain,*
*Orleans Correctional Facility*; ALBERT PRACK, *Director*
*of Inmate Discipline and Special Housing Units, DOCCS*;
BRIAN FISCHER, *Commissioner, DOCCS*,

Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

VICTOR SOWELL
Plaintiff, *Pro Se*
P.O. Box 493
Brooklyn, NY 11224

HON. ERIC T. SCHNEIDERMAN                    TIFFINAY M. RUTNIK, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Victor Sowell brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that while he was in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), his due process and equal protection rights were violated

---

[1] Michele M. Simmons, formerly known as "Michele M. Hubbard", was erroneously named as "L. Hubbard" in this lawsuit. Dkt. No. 34-16, Michele M. Simmons Decl., dated May 4, 2015, at ¶¶ 6-8; *see also* Dkt. No. 8, Am. Compl. at ¶ 2. The Court will refer to this Defendant by her current name.

during two disciplinary hearings.  Dkt. No. 8, Am. Compl.  Currently before the Court is Defendants' Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 34-1, Defs.' Mem. of Law; FED. R. CIV. P. 56.  Plaintiff opposes the Motion.  Dkt. No. 37, Victor Sowell Decl., dated May 30, 3015.  For the reasons set forth below, it is recommended the Defendants' Motion be **granted in part and denied in part.**

## I. BACKGROUND[2]

The relevant events in this action stem from two Tier III Disciplinary Hearings regarding a Misbehavior Report issued against Plaintiff on April 8, 2011, while he was an inmate at Orleans Correctional Facility.  Am. Compl.; Dkt. No. 34-2, Defs.' 7.1 Statement at ¶ 3.  The Misbehavior Report charged Plaintiff with refusing to obey a direct order, assault, violent conduct, disturbance, and (conduct) detrimental to the order of the facility.  Defs.' 7.1 Statement at ¶ 4.  Plaintiff alleges that on the morning of April 8, 2011, he saw Inmate Sano inside the vestibule of the D-2 dorm recreation area being assaulted by officers and he asked the officers to stop.  Am. Compl. at p. 5 ¶¶ 4-5.[3]  The Misbehavior Report states that as Inmate Sano was in the vestibule with the corrections officers, Plaintiff kicked open the vestibule door, yelled at the officers, tried to punch one, and

---

[2] While Plaintiff counters the arguments set forth by Defendants in their Memorandum of Law, he did not specifically respond to the Defendants' Statement of Material Facts, and therefore, pursuant to Federal Rule of Civil Procedure 56(e) and this District's Local Rules, the Court may rightfully deem the statements contained therein to be admitted.  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d. Cir. 1992); *see also* Dkt. No. 34-2, Defs.' Statement Pursuant to Rule 7.1(a)(3) (hereinafter "Defs.' 7.1 Statement").  Notwithstanding, the Court notes that many, if not all, of the facts contained in the Defendants' 7.1 Statement are not in contention and are verifiable through a review of the disciplinary hearing records.

[3] While Plaintiff correctly numbered each separate paragraph contained in his handwritten amended pleading, there are numerous instances where paragraph numbers are duplicated. Therefore, in citing to Plaintiff's Amended Complaint, the Court will utilize both page and paragraph numbers.

engaged in other violent behavior as prison staff tried to restrain him. Dkt. No. 34-16, Michele M. Simmons Decl., dated May 4, 2015, Ex. A, Misbehavior Rep., at pp. 1-2.[4] Plaintiff claims that the Misbehavior Report was fabricated in order to cover up the fact that the officers assaulted him for asking them to stop assaulting Sano. *See* Am. Compl. at p. 9 ¶ 14(b).

## A. The First Hearing

The first disciplinary hearing started on April 18, 2011, and ended eight days later on April 26, 2011. Defs.' 7.1 Statement at ¶ 12. J. Tinkham, who is not a named defendant in this action, served as Sowell's assistant and Captain Michele Hubbard, now known as Michele Simmons, presided as hearing officer.[5] *Id*. at ¶¶ 7-8 & 12. Sowell provided Tinkham with a two-paged handwritten list of requests, including a request that Tinkham go to the dorm and make an announcement for any inmate that wishes to testify on Sowell's behalf; interview potential witnesses; obtain written statements to be read into evidence from inmates who agreed to testify; interview and obtain written statements from Inmates Sano, Streeter, and Workman; find the identities of inmates who resided in D-2 Dorm-33 Cube and 14-Cube on April 8, 2011; and compile various documents. Simmons Decl., Ex. C at pp. 2-3. At the hearing, Plaintiff was told by Simmons that it was not Tinkham's job to seek out witnesses not identified by Plaintiff, get statements from potential witnesses, or ask questions of them prior to having them testify at the hearing. *Id*., Ex. D

---

[4] Attached to Simmons's Declaration are several Exhibits, labeled A-I, which are noted on the Court's Docket as Dkt. Nos. 34-16 through 34-18. When citing to Exhibits attached to her Declaration, the Court will identify the Exhibit letter and cite to the pages enumerated by Defendant Simmons at the bottom right corner of her Exhibits.

[5] At all times relevant to this lawsuit, Defendant Simmons served as a Captain at Orleans Correctional Facility; currently she is the Deputy Superintendent of Security at Albion Correctional Facility. Simmons Decl. at ¶¶ 2-3.

at pp. 7-8 & 83-84.

Multiple prison staff testified at the first hearing. *Id.*, Ex. D. Simmons questioned these witnesses and generally allowed Plaintiff to do so as well, only disallowing a question where it had already been answered or where she deemed it irrelevant. *Id.* Simmons also allowed Sowell to state his version of the events and similarly, with regard to staff testimony, she asked Sowell questions regarding his version of what transpired. *Id.* at pp. 5-6 & 97-98.

Inmates Workman, Streeter, Cotto, and Ingrahm were asked to testify, but they refused. *Id.* at p. 75. Inmate Sano initially agreed to testify but later refused. *Id.* Subsequent to Inmate Sano's refusal, Hearing Officer Simmons personally went and spoke to him to find out "if he was coerced or somehow enticed into not testifying." *Id.* Sano assured her he was not and signed a statement indicating he did not witness anything and did not feel he would be much help to Sowell. *Id.* & Ex. G at p. 9. On April 24, Defendant Simmons closed the testimony; however, the following day, she re-opened testimony upon realizing that certain witnesses requested by Plaintiff, though not identified by name, had not been contacted. *Id.*, Ex. D at pp. 106-07. Simmons contacted those individuals to ascertain if they would testify, but they refused. *Id.* All witnesses who refused to testify at the hearing indicated on witness refusal forms that they did not want to be involved or did "not know enough about the incident to provide relevant testimony[.]" *Id.*, Ex. G at pp. 3-10.

In addition to hearing witness testimony, Simmons also examined and/or discussed photos of Sowell's injuries and that of an officer, Sowell's Injury Report, as well the Unusual Incident Report, Use of Force Report, and other documents. *Id.*, Ex. D at pp. 93-96, 99, & 101-02.

At the conclusion of the hearing, Simmons found Sowell guilty of all charges. Defs.' 7.1 Statement at ¶ 13; Simmons Decl., Ex. E, at p.1. Plaintiff appealed the hearing determination to

Brian Fischer, the former Commissioner of DOCCS. Dkt. No. 34-10, Tiffinay M. Rutnick, Esq., Decl., dated May 5, 2015, Ex. C.[6] On July 8, 2011, the determination was affirmed by Albert Prack, the former Director of Special Housing and Inmate Disciplinary Program. Dkt. No. 34-19, Donald Venettozzi Decl., dated Apr. 30, 2015, at ¶¶ 16-17;[7] Venettozzi Decl, Ex. A.

## B. The First Article 78 Proceeding

Plaintiff subsequently filed an Article 78 Petition in Albany County Supreme Court challenging the disciplinary determination and the affirmance of such determination. Rutnick Decl., Ex. F. On January 29, 2012, the Honorable Joseph C. Teresi granted the Article 78 Petition, finding that violations of state regulations relating to inmate assistance entitled Plaintiff to a re-hearing arising from the charges in the Misbehavior Report. *Id*. at pp. 3-4. The matter was then remitted to DOCCS for further proceedings. *Id*. at pp. 1 & 6.

## C. The Second Hearing ("Re-Hearing")

A re-hearing conducted by Defendant Steven F. Bullis commenced on March 20, 2012, and ended several months later on July 3, 2012. Defs.' 7.1 Statement at ¶ 24; Dkt. No. 34-4, Steven F. Bullis Decl., dated May 4, 2015, at ¶ 10.[8] B. Dabiew, who is not a named defendant in this action,

---

[6] Attached to Attorney Rutnick's Declaration are several Exhibits, labeled A-G, which are noted on the Court's Docket as Dkt. Nos. 34-10 through 34-15. When citing to Exhibits attached to her Declaration, the Court will identify the Exhibit Letter and cite to the pages enumerated by Rutnick at the bottom right corner of her Exhibits.

[7] Attached to Venettozzi's Declaration are Exhibits labeled A-B, which are noted on the Court's Docket as Dkt. Nos. 34-19 through 34-23. When citing to Exhibits attached to his Declaration, the Court will identify the Exhibit letter and cite to the pages enumerated by Venettozzi at the bottom right corner of his Exhibits.

[8] Attached to Bullis's Declaration are several Exhibits, labeled A-H, which are noted on the Court's Docket as Dkt. Nos. 34-4 through 34-7. When citing to Exhibits attached to his Declaration, the Court will identify the Exhibit letter and cite to the pages enumerated by Bullis at the bottom
(continued...)

served as Plaintiff's assistant for the second hearing. Bullis Decl., Ex. F at p. 1. Attached to the Assistant Form are eleven hand-written pages containing Sowell's numerous requests of Dabiew, which include requests to interview certain staff and inmates and for various documents related to the incident, some of which he received. *Id*. at pp. 2-12. Sowell indicated to Dabiew that the Misbehavior Report stated that thirty inmates were present for the April 8, 2011 incident. *Id*. Sowell wanted Dabiew to interview these inmates regarding what they saw or heard and ask the inmates for written statements. *Id*. In response to Sowell's assistance-based requests at the re-hearing, Bullis stated that only inmates who agreed to testify would be interviewed or asked to provide a statement. *Id*., Ex. B at pp. 44-52 & 57. Inmates who refused to testify completed witness refusal forms. *Id*., Ex. C. A discussion ensued during the hearing wherein Plaintiff challenged the legitimacy of some of the refusal forms because they each contained the identical phrase "don't know anything about incident" written in the same handwriting. *Id*., Ex. B at pp. 141-48 & Ex. C. Bullis thereafter contacted facilities where the inmates of the insufficient forms were housed and asked each them to provide a more specific reason for the refusal to testify. *Id*., Ex. H at pp. 33 & 39. Of the twenty-eight forms at issue, twenty-six were sent back to Bullis with further information or indications that the inmate refused to provide a reason. *Id*., Ex. B at pp. 161 & 165. One inmate had been released on paroled since initially completing his refusal form, so no form for him was sent back to Bullis. *Id*. at p. 166. Upon Bullis's receipt of the returned forms, he reviewed them and found them to be sufficient. *Id*. at pp. 161, 165, & 167.

During the re-hearing, it was revealed that Inmate McDonald, who's initial refusal form,

---

[8](...continued)
right corner of his Exhibits.

dated March 13 indicated that he did not know anything about the incident, was willing to testify. *Id*. at p. 166 & Ex. C at pp. 46 & 64. An attempt was made to have Inmate McDonald interviewed, but when a staff member went to do so, McDonald indicated that he once again refused to testify because he did not "wish to involve [himself] in this incident any further. . . . [and that the] decision . . . is based upon [him] going [h]ome in 90 days & don't wish to be involved." *Id*., Ex. B at pp. 409-10 & Ex. C at pp. 30, 32, & 35. Lieutenant D. Clary provided a memorandum stating that he interviewed McDonald, and that Inmate McDonald denied "being coerced by anybody and made it clear that this decision is being made of his own free will. Inmate McDonald filled out and signed Form 2176A 'Inmate Refusal to Testify' which was witnessed by myself Lt. D. Clary[.]" *Id*., Ex. C at p. 32. Sowell objected to Bullis not personally interviewing McDonald regarding his reason for declining to testify after he had previously agreed to. *Id*., Ex. B at p. 457.

Three inmates testified at the re-hearing, including Ingrahm, Lowe, and Avincola. *Id*. at pp. 399-403, 414-24, & 427-31. Though Ingrahm testified at the re-hearing, he was never interviewed prior to providing his testimony, however Lowe and Avincola were. *Id*. at pp. 399-400 & 408-09. Bullis asked Sowell if there were other inmates he wanted to call and asked Sowell what would be presented on his behalf by each witness. *Id*. at pp. 451-55. Because Sowell could not indicate what the inmates would provide on behalf of his defense, no other inmate, including any that had been released, were contacted regarding their willingness to testify at the re-hearing. *Id*.

Multiple officers also testified at the re-hearing. *Id*. at pp. 232-397. During the questioning of the officers, Bullis refused to let Sowell reference their prior testimony from the Simmons hearing. *See, e.g., id*. at pp. 246, 254-55, 258, 261, 265, 267, 313-14, 322-23 & 378. Sowell wanted to use the prior testimony to show that the officers were lying. *See* Am. Compl. at pp. 12-13 ¶

23(D); Sowell Decl. at ¶ 12.

At the conclusion of the re-hearing, Bullis found Plaintiff guilty of all charges and sentenced him to thirty-six months in the Special Housing Unit with corresponding loss of privileges.  Defs.' 7.1 Statement at ¶¶ 61-62.  In arriving at his disposition, Bullis relied upon the Unusual Incident and Use of Force Reports, the fact that the description of the incident at issue in the Misbehavior Report was corroborated by the testimony of the three Officers who testified, and that in Bullis's opinion, Sowell presented no credible evidence contradicting such testimony.  Bullis Decl., Ex. A at p. 2. Plaintiff appealed the determination to then-Commissioner Brian Fischer.  Venettozzi Decl., Ex. B at pp. 12-70.  The determination was affirmed by Defendant Albert Prack on September 7, 2012. *Id*. at p. 11.

### D.  The Second Article 78 Proceeding

Plaintiff again filed an Article 78 Petition in Albany County Supreme Court, this time challenging aspects of his re-hearing.  Defs.' 7.1 Statement at ¶ 63.  On March 9, 2013, Judge Teresi again granted Plaintiff's petition, finding that Plaintiff's constitutional right to call witnesses was violated for multiple reasons.  Rutnik Decl., Ex. G.  More specifically, Judge Teresi concluded that such rights were violated when Bullis failed to personally verify the validity of Inmate McDonald's refusal given that McDonald had previously agreed to testify prior to refusing.  *Id*. at pp. 4-5.  In the court's opinion, because the refusal came after agreeing to testify, Bullis should not have relied upon McDonald's witness refusal forms and the unsworn letter from Lieutenant Clary.  *Id*. at p. 5.  The court also held that Sowell's right to call witnesses was additionally violated when Bullis denied Sowell's request to "call prison officials and an Inspector General who allegedly investigated the incident underlying his hearing."  *Id*.  Judge Teresi stated that "[c]ontrary to the hearing officer's

conclusory statement that such witnesses would offer no 'material or relevant evidence,' these proposed witnesses could have testified about their investigation rather than their personal observation." *Id*. Finally, he found that Bullis violated Plaintiff's right to call witnesses by not allowing Sowell to question witnesses about their prior testimony, despite that such testimony was "highly relevant to [Sowell]'s defense of fabrication." *Id*. at pp. 5-6. As a result of granting Sowell's petition, the re-hearing determination was vacated and expunged from Plaintiff's record. Defs.' 7.1 Statement at ¶ 64.

## II. DISCUSSION

### A. Standard of Review

#### 1. Summary Judgment

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as

evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### 2. Qualified Immunity

Qualified immunity shields government officials from civil damages liability unless the official violated the statutory or constitutional right that was clearly established at the time of the challenge conduct. *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he [or she] is doing violates that right." *Id.* When properly applied, qualified immunity protects all the complaint in a competent or those who knowingly violate the laws. *Ashcroft v. Al-Kidd*, 563 US ___, 131 S.Ct. 2074, 2080 (2011). In deciding this issue, it is proper for a court to grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law,

without resolving the often more difficult question whether the purported right exists at all. *Pearson v. Callahan*, 555 U.S. 223, 241 (2009).

### B. Collateral Estoppel and the Albany County Supreme Court Decisions

As noted above, there have already been two State decisions invalidating the hearing process to which the Plaintiff was subject. *See In re Sowell v. Fisher*, 2012 WL 359296 (N.Y. Sup. Jan. 29, 2012), *appeal dismissed, Sowell v. Fischer*, 108 A.D.3d 962 (3d Dept't 2013); Rutnik Decl., Exs. F & G. Plaintiff points to these decisions for the proposition that summary judgment should be denied, although he concedes that this Court is not bound by the state court rulings. Sowell Decl. at ¶ 17. On this latter point, Plaintiff is correct.

Pursuant to the Full Faith and Credit clause of the United States Constitution, as implemented by the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give the same preclusive effect to a state judgment as would be given in the courts rendering that judgment. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984). It has been held in this Circuit, however, that a prisoner cannot use an Article 78 proceeding to collaterally estop prison officials from relitigating a federal constitutional issue. *Guiterrez v. Coughlin*, 841 F.2d 484, 486 (2d Cir. 1988). This is because the state court is not empowered to award monetary damages in an Article 78 proceeding. *Davidson v. Capuano*, 793 F.2d 275, 278–80 (2d Cir. 1986). If respondents cannot be held personally liable in the Article 78 proceeding, they will not have the same motivation to litigate the state court action as they do in a Section 1983 lawsuit. Conversely, prison authorities can be found personally liable for both compensatory and punitive damages in a federal court Section 1983 action. *Guiterrez v. Coughlin*, 841 F.2d at 486. Moreover, the defenses of absolute and qualified immunity, or lack of personal involvement would not be available to prison officials

*-11-*

in the Article 78 proceeding. *Id.* The reasoning of *Guiterrez* is applicable to the case at bar, and the Defendants here are not precluded from relitigating whether Planitiff's constitutional rights were violated.

In addition, the Court notes that while the first hearing was overturned based upon a violation of State law, "[a] violation of a state law or regulation, *in and of itself*, does not give rise to liability under 42 U.S.C. § 1983." *Robles v. Bleau*, 2008 WL 4693153, at *10 (N.D.N.Y. Oct. 22, 2008) (citations omitted) (emphasis in original). Thus, this Court is not bound by the findings and decisions rendered by Judge Teresi.

### C. Due Process

Plaintiff alleges that Defendants violated his procedural due process rights at both hearings. *See generally* Am. Compl. To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statutes or regulations. *Id.* With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *id.* at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and that under it, prisoners are only protected from restraints that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515

U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Once a prisoner makes a threshold showing of atypical and significant confinement, the court should determine whether that prisoner, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A prisoner placed in disciplinary segregation must be provided (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action. *Id.* at 564-66; *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (quoting *Hewitt v. Helms*, 459 U.S. at 476). Additionally, the Second Circuit has held that an inmate confined to the SHU facing a disciplinary hearing is entitled to assistance in obtaining evidence and putting forth a defense. *Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).

### 1. Liberty Interest

As a result of being found guilty at both hearings, Plaintiff served 633 days in the SHU. Am. Compl. at p. 9 ¶ 15. Thus, Defendants correctly concede that a liberty interest is implicated in this case. Defs.' Mem. of Law at p. 2. Accordingly, we need only determine whether Plaintiff was deprived of any of the minimum requirements of due process at either hearing.

### 2. Notice at the Second Hearing

Plaintiff argues that he was not properly served with the entire two-paged Misbehavior Report and was thereby was deprived of adequate notice of the charges to be adjudicated at the Bullis re-hearing. Am. Compl. at p. 13 ¶ 23(F).

As noted above, after the first Article 78 decision, a re-hearing, conducted by Defendant Bullis, commenced on March 20, 2012, and ended several months later on July 3, 2012. Bullis Decl., Ex. B. On the first day of the re-hearing, Plaintiff indicated to Bullis that he had only been served by Officer Forbes with one page of the Misbehavior Report. *Id.* at pp. 6-7. Bullis looked into the matter, received the second page that same day, and provided Sowell with a copy of it. *Id.* at pp. 8-17.

Due process requires that an inmate be given written notice of the charges against him at least twenty-four hours in advance of a disciplinary hearing on those charges. *Wolff v. McDonnell*, 418 U.S. at 564; *Sira v. Morton*, 380 F.3d 57, 70 (citing *Wolff*, 418 U.S. at 564). The purpose of this requirement is to ensure that the inmate has the written charges before him twenty-four hours prior to when he has to actually defend himself, "not to hold hearing officers to a rigid and useless requirement that they may only call an inmate into a hearing room once they are positive that the inmate received a copy of his misbehavior report at least twenty-four hours earlier." *Martin v. Mitchell*, 1995 WL 760651, at *2 (N.D.N.Y. Nov. 24, 1995) (citing *Wolff*, 418 U.S. at 564 and *Benitez v. Wolff*, 985 F.2d 662, 665 (2d. Cir. 1983)); *see also Johnson v. Fernandez*, 2011 WL 7629513, at *9 (N.D.N.Y. Mar. 1, 2011).

Here, Plaintiff technically received both pages of the Misbehavior Report on February 8, 2012, but the second page was stapled to a separate document. Bullis Decl., Ex. A at p. 1; Venettozzi Decl., Ex. B at p. 16-17. Even if the Court were to consider March 20, 2012 as the operative date that Plaintiff received the correctly joined two-paged report, he did not attempt to dispute the charges until April 5, 2012, because the re-hearing kept being adjourned in order to provide Sowell with further assistance, and witnesses were not called to testify at the re-hearing until

June 5, 2012. Bullis Decl., Ex. B at pp. 92, 95-97, & 231-32. Thus, Plaintiff had far more than twenty-four hours notice prior to being required to defend himself against the violations alleged in the Misbehavior Report. *Johnson v. Fernandez*, 2011 WL 7629513, at \*9 (finding no due process violation where despite potential lack of twenty-four hours notice prior to the start of the hearing, the plaintiff did not have to actually defend himself against the charges until six days after he received notice). For the same reason, Plaintiff's argument that the failure to have the full Misbehavior Report impaired his assigned assistant is rejected. As the re-hearing lasted until July 3, Officer Dabiew had sufficient time to utilize the Misbehavior Report in order to provide assistance to Plaintiff. Accordingly, the Court finds that Plaintiff received adequate notice and that there was no due process violation as to this requirement.

### 3. Right to Call Witnesses and Inmate Assistance

Sowell alleges that Hearing Officers Simmons and Bullis denied him the constitutional right to call witnesses and curtailed his assistants from interviewing potential witnesses. *See generally* Am. Compl. In *Wolff v. McDonnell*, the Supreme Court stated that an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. Prison officials can deny a witness where that witness's testimony is irrelevant to the charges being adjudicated, would be cumulative, or the hearing officer reasonably believes it would be futile to call the witness. *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30-31 (2d Cir. 1991) (citing *Wolff*, 418 US at 566); *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (citing *Wolff*, 418 U.S. at 566 ); *see also Shell v. Brzezniak*, 365 F. Supp. 2d 362, 377 (citing *Wolff*, 418 U.S. at 567 & *Walker v. McClennan*, 126 F.3d 127, 130 (2d Cir. 1997)). However, where a hearing officer

-15-

denies a witness, "the burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of his position." *Diaz v. Burns*, 2015 WL 5167181, at *9 (W.D.N.Y. Sept. 3, 2015) (quoting *Fox v. Coughlin*, 893 F.2d 475, 478 (2d. Cir. 1990) (internal quotation marks and alteration omitted).

<u>a.  Simmons Hearing</u>

The hearing transcript reveals that Inmates Sano, Workman, Streeter, Cotto, and Ingman were asked by the Assistant Tinkham if they would testify on Plaintiff's behalf, but they were not interviewed. *Id*. at pp. 75 & 89-91.  Inmates Workman, Streeter, Coto, and Ingram refused to testify. *Id*. at p. 75.  Inmate Sano initially agreed to testify but later refused. *Id.*  Subsequent to Inmate Sano's refusal, Hearing Officer Simmons personally went and spoke to him to find out if he was "coerced or somehow enticed into not testifying." *Id.*  Sano assured her he had not been coerced and signed a statement indicating he did not witness anything and he did not feel he would be much help to Sowell. *Id.*; Simmons Decl., Ex. G, at p. 9.  Prior to closing testimony for the hearing, Simmons identified the inmates whom Sowell had only identified by cell location, determined them to be Inmates Spera and Davis, and contacted them regarding if they would testify, but both refused. Simmons Decl., Ex. D, at pp. 106-07.  All witnesses who refused to testify at the hearing indicated on witness refusal forms that they did not want to be involved or did "not know enough about the incident to provide relevant testimony[.]" *Id*., Ex. G at pp. 3-10.

In liberally construing Plaintiff's claims, it appears that Plaintiff believes his right to assistance and call witnesses was violated.  Simply because a hearing officer does not call or interview certain potential witnesses that the inmate desired, however, does not necessarily mean that a federal constitutional violation occurred.  This is so because there are legitimate reasons for

keeping hearings "within reasonable limits, refusing to call witnesses who may create a risk of reprisal or undermine authority, and limiting access to other inmates to collect statements or to compile other documentary evidence." *Jamison v. Fischer*, 617 F. App'x 25, 27 (2d Cir. 2015) (quoting *Wolff v. McDonnell*, 418 U.S. at 566) (internal quotation marks omitted). In *Jamison,* the hearing officer refused to call witnesses requested by the inmate because the inmates had submitted forms indicating their refusal to testify. *Id*. The Plaintiff maintained that the hearing officer's reliance upon incomplete "Witness Refusal Forms" violated his constitutional rights. *Id*. The Second Circuit, albeit in the context of qualified immunity, noted that there was no law that prohibited the hearing officer from reaching a reasonable conclusion of futility by relying on a correction's officer's signed statement that the inmate had expressed an unwillingness to testify. *Id*. at 27-28. Here, as stated above, Simmons did not call witnesses who refused to testify, but she allowed Plaintiff to question all witnesses who testified at the hearing, made efforts to ensure Inmate Sano was not refusing to testify due an improper reason, and tried to help Sowell obtain witnesses whose identity was not known to him. As such, it cannot be said that Hearing Officer Simmons violated clearly established law. Therefore, the claims against Simmons regarding the failure to call inmate witnesses who had indicated their unwillingness to testify should be dismissed.

Next, Plaintiff claims that his rights were violated because of the insufficient actions of the inmate assistant. Am. Comp. at p. 10, ¶ 16 ("[Tinkham] failed to provide meaningful assistance by not interviewing and calling the inmates that were present during the incident. The assistant stated that he was advised by 'higher authorities' that he could not interview the inmates."). In *Eng v. Coughlin,* the Second Circuit stated that included in the Due Process Clause of the Fourteenth Amendment is the right of an inmate confined to the SHU to assistance in obtaining evidence and

defending himself against charges in a prison disciplinary hearing. 858 F.2d at 897-98. "[S]uch help certainly should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses." Additionally, the assistance must be "provided in good faith and in the best interests of the inmate," such that even where a request is burdensome, the assistant must make some effort to carry out the request. *Id.* at 898.

In the present case, the Plaintiff has not sued his inmate assistant, nor has he sued the "higher authorities" that were alleged to have instructed his assistant not to do any investigation. This is significant because liability under § 1983 is based upon the individual's own conduct, not necessarily the conduct of others. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff points to the comments of the hearing officer at the hearing, wherein Defendant Simmons noted that the assistant does not interview or drudge up witnesses, but only asks if they will testify on the inmate's behalf. Am. Comp. p. 10, ¶ 16; Simmons Decl., Ex D at p. 8. It is true that the statements of Defendant Simmons regarding the limited nature of the activities of Mr. Sowell's assistant are mistaken and that an inmate assistant is indeed supposed to talk to and interview potential witnesses in preparation for the hearing. As the Second Circuit noted over twenty-five years ago in the case of *Fox v. Coughlin*:

> [W]e write to emphasize that a failure to provide inmate assistance in preparing a defense or interview an inmate's requested witnesses without assigning a valid reason may in the future provide a sufficient basis for a viable § 1983 action. Prison authorities are now under a constitutional obligation to provide assistance to an inmate preparing for a disciplinary hearing. In addition, and inmates due process rights are violated when a prison hearing officer refuses interview witnesses without assigning a reason "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" The burden is not upon the inmate to prove the officials conduct was arbitrary and capricious, but upon the official to prove the rationality of his position.

893 F.2d at 478.

Nevertheless, it does not follow that Defendant Simmons's actions violated Plaintiff's constitutional rights. In this regard, the Court must look to what the Defendant actually did, not merely what she said. "Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate." *Robles v. Bleau,* 2008 WL 4693153, at *10 (N.D.N.Y. Oct 22, 2008). In the present case, at the time of Defendant Simmons's involvement in the matter at the beginning of the hearing, the acts or failures of the inmate assistant had already occurred, and the inmates that Plaintiff wanted to testify were refusing to cooperate. Faced with this fact, Defendant Simmons spoke with certain witnesses whom Mr. Sowell identified as individuals that would be willing to testify on his behalf. She also investigated the location of certain additional witnesses and inquired as to those that did not wish to testify to ensure that they were not coerced into taking that position. Without reaching the issue as to whether the inmate assistant failed in his constitutional duty to the Plaintiff, which is not before the Court, it cannot be said that Defendant Simmons violated any clearly established law.

### b. Bullis Re-Hearing

Plaintiff alleges that he was not provided meaningful help from Dabiew, his assistant at the re-hearing. Am. Comp. at p. 13, ¶ 23(E). However, from the record it appears that Officer Dabiew attempted to contact over thirty-five witnesses at multiple facilities to see if they would testify, interviewed two out of three witnesses that agreed to testify, and obtained numerous documents for Plaintiff. Bullis Decl., Ex. B at pp. 58, 62-63, 65, 69, 399-403, & 408-09; Bullis Decl., Ex. H at p. 31; Bullis Decl., Ex. F at p. 6. Therefore, the assistance provided by Dabiew was constitutionally

adequate. In any event, Mr. Dabiew is not a defendant in this action.

Mr. Sowell also claims that his right to call witnesses at the re-hearing was violated when Bullis prohibited him from using the transcript from the first hearing to show inconsistencies between that testimony and staff testimony at the re-hearing. Am. Compl. at pp. 12-13, ¶ 23(D). This was a partial basis for the state court to vacate the hearing determination and expunge the record. However, Plaintiff makes clear that the purpose of the prior testimony was to cross-examine the officers to show that they were lying. Based upon this intended purpose, Bullis was within his authority to deny the introduction of prior testimony as it is well established that an inmate in a prison disciplinary hearing does not have the right of confrontation or cross-examination. *Wolff v. McDonnell*, 418 US at 567; *Pino v. Dalsheim*, 605 F. Supp. 1305, 1313 (S.D.N.Y. 1984) (citing *Wolff*, 418 US at 567-69). Thus, the Court finds that Bullis did not violate Plaintiff's right to call witnesses by prohibiting him from attempting to cross examine them by utilizing their prior testimony.[9]

Plaintiff next claims that his right to call witnesses was violated because he was not allowed to call those inmates that were present during the April 8, 2011 incident but had since been released from DOCCS custody. Am. Compl. at p. 12, ¶ 23(B). However, there is nothing in the record that indicates that these unavailable witnesses would have provided any evidence favorable to Sowell beyond that testified to by the inmates who testified on Sowell's behalf, and therefore this argument fails as a matter of law. *Livingston v. Kelly*, 423 F. App'x 37, 41 (2d Cir. 2011) (citing *Russell v. Selsky*, 35 F.3d 55, 58-59 (2d. Cir. 1994)).

With regard to Bullis's refusal to call inmate witnesses that had stated their refusal to testify,

---

[9] It would be materially different if Plaintiff needed the prior testimony for other reasons.

the same justification exists for this act as explained in connection with Officer Simmons.[10] It should be noted that when Bullis initially reviewed the inmate witness refusal forms, he found many to be insufficient and sent twenty-eight of them back to the appropriate facility for inmates to provide further information regarding why they would not testify. While some of these inmates then indicated that they did not see or hear the incident, many also provided other reasons. *See, e.g.* Bullis Decl., Ex. C at pp. 3-4, 6, 9, 11-12, 15, 17-19, 24-25, & 60.

As to Inmate McDonald, he originally refused to testify, but then changed his position. Plaintiff claims that his right to call witnesses was violated because Bullis did not personally ascertain Inmate McDonald's reason for refusing to testify after he agreed to do so previously. Am. Compl. at p. 12, ¶ 23(C). Courts in the Second Circuit have indicated that where a witness indicates their refusal to testify, hearing officers are not obligated to inquire into the reason for such refusal unless there is evidence of intimidation by prison officials. *Shell v. Brzezniak*, 365 F. Supp. 2d at 377 (citations omitted); *Hill v. Selsky*, 487 F. Supp. 2d 340, 342-43 (W.D.N.Y. 2007); *Merced v. Moylan*, 2007 WL 3171800, at *9 (N.D.N.Y. Oct. 29, 2007); *see also, generally, Silva v. Casey*, 992 F. 2d 20, 21-22. (2d Cir 1993) (hearing officer has no power to compel witness to testify, and where that official reasonably concludes that it would be futile to call a witness, his refusal to do so will not constitute a violation of the prisoner's constitutional rights). In the present case, a staff member inquired as to McDonald's change in his decision to testify. Sowell argues that it was a constitutional violation to delegate that inquiry to others and that Bullis should have done it himself. However, the federal courts have allowed the hearing officer to rely upon refusal statements

___

[10]A review of the record shows no evidence that Bullis told the officers witnessing the refusal forms to tell inmates what to provide as their reason for refusing to testify, as speculated to by the Plaintiff.

prepared by others. *Jamison v. Fischer*, 617 F. App'x at 27-28. Thus, this Court finds no constitutional violation as to this claim.

Finally, Plaintiff alleges that his right to call witnesses was violated because he was not allowed to call Officers Buckland, Forbes, Holt, Jeager, Kurek, Lamar, Sergeants Allen, Andrus, Austin, Investigator Lugo, and various nurses as witnesses at the re-hearing. Am. Compl. at p. 12, ¶ 23(A); Bullis Decl., Ex. B at pp. 436-51. At issue are three types of witness: 1) additional witnesses to the event, 2) witnesses, such as nurses, that could testify to Plaintiff's injuries, and 3) the testimony of two individuals who investigated the April 8, 2011 incident.

A majority of Bullis's denials were based on the fact that the witness would have been irrelevant. Bullis Decl., Ex. B at pp. 450-51. With regard to Officer Forbes, she was requested as a witness because Sowell wanted her to testify that he told her she was not serving him properly with the Misbehavior Report. *Id.* at pp. 20-21 & 104. She was denied as a witness because Sowell's purpose in calling her was something other than to testify in his defense concerning the charges in the Misbehavior Report. *Id.* at p. 104. Thus, the Court finds she was properly denied as a witness since her testimony would have been irrelevant to the charges being adjudicated.

Additionally, with regard to the event itself, three Officers involved in the incident at issue had already testified at the re-hearing, and Bullis had full written reports from Sergeant Andrus, and Officers Lamar, Jeager, and Buckland. Bullis Decl., Ex. H at pp. 9-11, 14, 16, & 17. None of those reports by the Officers which Plaintiff asked to call contradicted the testimony of Officers who did testify, namely Officers Nicholas, Prentice, and Mosier. *Id.* When asked why he wanted to call these witnesses, Sowell stated that they were present during the incident and/or were involved in the use of force upon him. *Id.*, Ex. D at pp. 105-107, 120-22, 436-42, & 448-49. Prison officials have

the discretion to keep disciplinary hearings within "reasonable limits" and Sowell's hearing had already lasted more than four months. *Wolff v. McDonnell*, 418 U.S. at 566. Thus, Bullis had the discretion to deny these staff as witnesses on the basis that their testimony would have been cumulative. *Kalwasinksi v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999); *but see Fox v. Coughlin*, 893 F.2d at 478 (hearing officer had no basis to conclude that testimony of two officers would be cumulative).

The additional injury witnesses were also properly excluded on the grounds of relevancy. For Officer Kurek, Officer Holt, and the nurses, Sowell indicated that they saw and/or took pictures of him after the incident. Bullis Decl., Ex. B at pp. 107, 09, 112-13, 442-43, & 449-50. He also indicated that Sergeant Austin was present for the end of the incident and when photos of his injuries were taken. *Id*. at pp. 109, 192-95, & 443-44. However, pictures of Sowell's injuries were part of the hearing packet that Bullis had when he conducted the re-hearing, and thus they were part of the record. *Id*. at pp. 74-75 & 192; Bullis Decl., Ex. A at p. 9. Additionally, despite the apparent fact that Austin, Holt, Kurek, and the nurses had seen Sowell's injuries, the Unusual Incident Report also had a description of Sowell's and the Officer's injuries right after the incident. Bullis Decl., Ex. H at p. 3. More importantly, Plaintiff's injuries do not speak to whether he was innocent or guilty of the charges in the Misbehavior Report, which was the sole purpose of the re-hearing. Therefore, Bullis acted within his discretion to deny those witnesses on the basis of relevancy.

Finally, Sowell sought to call Sergeant Allen, who did an investigation of the April 8, 2011 incident pursuant to a grievance Sowell filed, as well as Investigator Lugo from the Inspector General's Office, who also had conducted an investigation regarding the incident. *Id*., Ex. B at p. 54, 58-59, & 446-47. Defendant Bullis rejected these two witnesses, finding that their investigations

were not relevant to the re-hearing. *Id*. at pp. 110-12, 446-47, & 450. In particular, Bullis rejected the proposed testimony upon the grounds that a separate and independent investigation is, by definition, not relevant, *id.* at p. 59 ("[I]f someone did some sort of investigation on their own or some other agency I'm going there again to find that its not material and relevant for the purpose of this hearing."), as well the belief that any investigation of a misconduct report against staff is irrelevant to a misbehavior report against an inmate, *id.* at p. 445 ("I'm also going to remind you that this hearing is not a hearing as to your complaints as to staff conduct.").

Plaintiff Sowell maintained that the independent investigation and the grievance were in fact relevant for several reasons. On a basic level, Plaintiff's defense to the charge that he assaulted the officers was that he was, in fact, assaulted by them, and did not engage in any misconduct. Am Comp. at p. 9, ¶ 14(b). Thus, the asserted defense to the Misbehavior Report were inextricably interwoven. *Diaz v . Burns*, 2015 WL 5167181, at * 12 (W.D.N.Y. Sept. 3, 2015) (noting that the inmate's defense was that, contrary to the accusation that he assaulted CO Burns without provocation, he was actually attacked by the CO in retaliation for his work with the Inmate Grievance Review Committee).

In addition, Plaintiff maintained that Sgt. Allen, who investigated the grievance, also would or may testify that the Plaintiff did not assault anyone in the vestibule area. *Id.* at p. 444. Bullis rejected this request as Plaintiff could not point to any documentary evidence to support this assertion, other than the testimony from the first disciplinary hearing, which the hearing officer would not consider. *Id.* at pp. 444-45. Finally, Plaintiff asserted that Sgt. Allen and the Inspector General investigator, Officer Lugo, could provide information regarding their investigation and potential witnesses to the event. *Id.* at p. 446 (noting that the sergeant investigated the entire

situation and knows all of the witnesses that were present).

The Court notes that the record establishes there were inmate witnesses who agreed to testify, but then later refused. On the record before me, it is unclear if the two proposed investigative witnesses spoke to those particular inmates as part of their investigation. Is also not clear if Defendant Bullis ever spoke with two investigators or reviewed their investigative reports, as Bullis's does not address this issue. As stated above, it is the hearing officer who has the obligation to establish the reason for not calling the witness. *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30-31 (2d Cir. 1991) (citing *inter alia, Ponte v. Real*, 471 U.S. 491, 499 (1985)); *Diaz v. Burns*, 2015 WL 5167181, at *9 (citing *Fox v. Coughlin*, 893 F.2d at 478). The refusal of the hearing officer to call the individuals who investigated April 8, 2011 incident at the request of the inmate, without any justification supported by institutional need, may well constitute a violation of the inmate's due process rights. *See Diaz v. Burns*, 2015 WL 5167181, at *12 (because the investigator may have provided testimony that was material, his absence substantially prejudiced the prisoner-plaintiff's ability to present his defense, and it was error to deny the testimony for reasons other than institutional safety).

Based upon the present record, the Court recommends denying Defendant Bullis's Motion for Summary Judgment. As to this recommendation, the Court makes two additional points. First, Defendant has the ability at trial to testify as to the reasonable basis for his exclusion of the proposed witnesses, even if that reason was not contained in the written transcript. *Ponte v. Real*, 471 U.S. at 497. Second, in finding that an issue of fact exists on this claim, the Court notes that because I do not have the benefit of Bullis's full reasoning for denying the witnesses, I cannot assess the

objective reasonableness of his actions for qualified immunity purposes.[11]

### 4. Right to an Impartial Hearing Officer

Sowell claims that Simmons and Bullis were not impartial hearing officers. Am. Compl. at ¶¶ 14(b) & 23(D). An inmate facing a disciplinary hearing is entitled to an impartial hearing officer. *Patterson v. Coughlin*, 905 F.2d 564, 569 (2d Cir. 1990) (*citing Wolff v. McDonnell,* 418 U.S. at 570-71). An impartial hearing officer is one who "does not prejudge the evidence" or an inmate's guilt. *Id*. at 570; *Rodriguez v. Selsky*, 2011 WL 1086001, at *12 (N.D.N.Y. Jan. 25, 2011). Thus, a § 1983 claim that a hearing officer was biased requires more than "an inmate's own subjective belief" to this effect. *Brooks v. Prack*, 77 F. Supp. 3d 301, 316 (W.D.N.Y. 2014) (citing *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989)). A hearing officer satisfies his or her duty of impartiality when "the record contains some evidence to support the officer's findings" and that evidence is reliable. *Scott v. Frederick*, 2015 WL 127864, at *14 (N.D.N.Y. 2015 Jan. 8, 2015) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) & *Sira v. Morton*, 380 F.3d 57, 76-77 (2d Cir. 2004)).

At the first hearing, Simmons allowed Sowell to state his version of the events on the record and, similarly, with regard to the staff testimony, Simmons asked him questions regarding his version of what transpired. Simmons Decl., Ex. D at pp. 5-6 & 97. While at the hearing, among other evidence, Simmons examined and discussed photos of Sowell's injuries and that of an Officer

---

[11] The Court notes that a finding at trial that Bullis violated the Plaintiff's constitutional right to call witnesses, does not mean that the Plaintiff is entitled to anything more than nominal damages. Rather, to obtain damages for his stay in SHU as a result of the second hearing, Plaintiff would not only have to establish a constitutional violation, but would also have to show that the hearing result would have been different if the two disputed witnesses were allowed to testify. *Carey v. Piphus*, 435 U.S. 247 (1978); *McCann v. Coughlin*, 698 F. 2d 112, 126-127 (2d Cir. 1983).

involved in the altercation, as well as Sowell's Injury Report, and indicated that she considered all documentary evidence regarding the incident. *Id*. at pp. 93-96, 99, & 101. Additionally, the record shows no evidence that Simmons prejudged the evidence or Plaintiff's guilt, and the Court finds that her decision as to Plaintiff's guilt is supported by the requisite amount of evidence.

As for Defendantg Bullis, Sowell claims that Bullis was a biased hearing officer because he allegedly "told the officers witnessing the witness refusal forms to tell inmates to indicate that they did not 'see or hear anything[,]'" would not allow Sowell to use documentary evidence to question Officers, would not allow his assistant to interview inmate or staff witnesses and have them write statements, and he because he allegedly tried to hide that Inmate McDonald had agreed to testify. Am. Compl. at pp. 12-13, ¶ 23(D). These contentions are dealt with above, as these allegations speak to concerns regarding his right to present witnesses and to inmate assistance. *See Brooks v. Prack*, 77 F. Supp. 3d at 317 ("Although Plaintiff does allege that he was denied the ability to present certain evidence at the hearing, and that the hearing was recommenced outside of his presence, 'those facts,. . . go to Plaintiff's right to call witnesses and present a defense'" and not to impartiality). Furthermore, as with the Simmons Hearing, the record reveals no evidence that Bullis prejudged the evidence or Sowell's guilt. Finally, his disposition is also supported by the required amount of evidence. Accordingly, the Court finds no merit to the allegations that Simmons or Bullis were not impartial hearing officers.

### D. Equal Protection

Plaintiff alleges he was denied equal protection of the law at both the Simmons and the Bullis Hearings "when they intended to inhibit the exercise of [his] constitutional rights[.]" Am. Compl. at p. 19. He alleges an equal protection claim against Prack and Fischer on the ground that

they did not grant his appeals and thereby "failed to remedy the wrongs occurring at the hearings for the purpose of punishing this petitioner and intentionally inhibiting [him] from exercising [his] constitutional rights[.]" *Id.* at p. 21. Sowell states that he was "singled out from similarly situated persons in solitary confinement facing charges of assault on staff and violent conduct[,]" that his disciplinary history caused him to be treated differently, and that he was treated differently because of his "ability to demand, vigorously, the procedural and [c]onstitutional due process due to [him] at the hearings." *Id.* at pp. 19 & 22.

To succeed on an equal protection claim, a plaintiff must provide "factual allegations to support the legal conclusion" that an equal protection violation occurred. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). "[A]llegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d. Cir. 1987). In his Amended Complaint, Opposition to Defendants' Motion for Summary Judgment, and Article 78 petitions, Plaintiff does not put forth any facts showing how he was treated differently from other inmates. *Butler v. Batavia*, 323 F. App'x 21, 22 (2008) (citing *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). He also fails to do this at his deposition. Rather he made conclusory statements including, among others, that Hearing Officer Simmons "was fair with all the other prisoners that she dealt with, she wasn't fair to me[,]" Rutnik Decl., Ex. B at pp. 45,[12] and that in regard to Defendant Prack, "assuming that, you know, he's equal and fair to everybody that comes before him in the appeal process, he wasn't equal to me[,]" *id.* at p. 52. Given that Plaintiff has failed to set forth facts showing that he was treated different from other similarly

---

[12] Page numbers for this Exhibit are listed in the top right corner of the page.

situated inmates, the Court recommends granting summary judgment on Plaintiff's equal protection claim. *Butler v. Batavia*, 323 F. App'x at 22 (citing *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d at 790); *Vill. of Willowbrook v. Olech*, 528 U.S. at 564.

### E. Supervisory Liability

Plaintiff alleges that Fischer and Prack "failed to correct and remedy the obvious violations of plaintiff[']s rights" upon his appeals. Am. Compl. at pp. 10-11, ¶¶ 17 & 20. To be held liable for a constitutional violation under § 1983, a defendant must have had the requisite amount of personal involvement in said violation. *Rodriguez v. Selsky*, 2011 WL 1086001, at *5 (N.D.N.Y. Jan. 25, 2011). "[A] supervisory official . . . cannot be held liable under section 1983 solely for the acts of his subordinates." *Friedland v. Otero*, 2014 WL 1247992, at *9 (N.D.N.Y. Mar. 24, 2014) (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). However, in *Colon v. Coughlin*, the Second Circuit stated that "personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." 58 F.3d 865, 873 (2d Cir. 1995).[13] While courts within the Second Circuit

---

[13] The Second Circuit notes that the 2009 case of *Ashcroft v. Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" however, they have not yet directly addressed which, if any, part(s) of the *Colon* test are still viable for imposing supervisory liability. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d (continued...)

are divided on the issue, Judges in the Northern District have held that "affirmance . . . of a constitutionally defective disciplinary determination at a time when the inmate is still serving his or her disciplinary sentence, and the violation can therefore be abated" is sufficient to establish supervisory liability. *Rodriguez v. Selsky*, 2011 WL 1086001, at *6 (citing *Colon v. Coughlin*, 58 F.3d at 873).

Here, Brian Fischer states that as Commissioner, he did not review disciplinary hearing appeals, but rather he delegated them to the Director of Special Housing and Inmate Discipline. Dkt. No. 34-8, Brian Fischer Decl., dated Apr. 27, 2015, at ¶ 5. He states that he "delegated responsibility for routine lawsuits and legal proceedings to the Department's Office of Counsel or the officer or bureau involved in the underlying issue. Article 78 proceedings are handled directly by those officers, and only matters requiring [his] input or potentially involving departmental issues or matters in which [he has] personal involvement are brought to [his] attention." *Id*. at ¶ 6. Given that the submitted evidence fails to contest these statements, the Court finds that there is not a properly supported basis for imposing supervisory liability on Fischer, and his position as Commissioner did not render him liable for Prack's affirmance of the hearing determinations. Thus, the Court recommends granting summary judgment as to claims against him.

However, appeals from Tier III hearings are reviewed by the Office of Special Housing and are "decided by the Director as the Commissioner's designee." Venettozzi Decl. at ¶ 13. The evidence indicates that on July 8, 2011, the Simmons Hearing determination was affirmed by Defendant Prack. *Id*. at ¶ 16; Venettozzi Decl., Ex. A. On or about September 7, 2012, the Office

---

[13](...continued)
Cir. 2013); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012); *Henson v. Gagnon*, 2015 WL 9809874, at *14 n.15 (N.D.N.Y. Dec. 10, 2015).

of Special Housing reviewed Plaintiff's appeal from his re-hearing, and it "appears that Director Prack determined [P]laintiff was afforded all due process mandated by <u>Wolff v. McDonnell</u>," and the office thereby upheld the finding of Sowell's guilt on all charges in the Misbehavior Report. Venettozzi Decl. at ¶¶ 19 & 21-23. Given this evidence, and in light of the previous finding regarding the issues of fact surrounding Defendant Bullis's denial of witnesses, the Court finds an issue of fact exists as to whether Director Prack is liable.

### F. Eleventh Amendment

In his Amended Complaint, Sowell alleges that all Defendants are sued in both their individual and official capacities. Am. Compl. at p. 3. The Eleventh Amendment bars an action for damages against a State and this bar applies to actions in which State officials are sued for damages in their official capacities, but does not apply where they are sued in their individual capacities. *Kentucky v. Graham*, 473 US 159, 169 (1985) (citations omitted); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (1993) (citations omitted). Accordingly, here, Sowell is barred by the Eleventh Amendment from suing any of the Defendants for monetary damages in their official capacity, but is not so precluded for suing them for damages in their individual capacities.

The Eleventh Amendment provides for injunctive relief in suits against State officials in their official capacities. *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645-46, 648 (2002). However, the Prisoner Litigation Reform Act ("PLRA"), which applies in this case, states that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." *Benjamin v. Schriro*, 370 F. App'x 168, 169 (2d. Cir. 2010) (citing 18 U.S.C. § 3626(a)(1)(A)); *Freeman v. Goord*, 2005 WL 3333465, at *12 (S.D.N.Y. Dec. 7, 2005) (citing 18

U.S.C. § 3626(g)(7)); *Davis v. Barrett*, 576 F.3d 129, 132 (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Furthermore, the Second Circuit "has long and consistently held that a plaintiff's request for declaratory or injunctive relief relating to a correctional facility is moot once plaintiff is transferred or released from the facility." *Phillips v. Ienuso*, 1995 WL 239062, at *1 (S.D.N.Y. Apr. 24, 1995) (citations omitted).

Here, since Plaintiff is currently released from prison, and prior to that, the guilty determination from the Bullis Hearing was ordered expunged from his record, no further injunctive relief is necessary to correct any constitutional violation that may have occurred at either Hearing. Rutnik Decl., Ex. B at p. 4; Rutnik Decl., Ex. G at p. 6; Venettozzi Decl., Ex. B at p. 266. Therefore, the Court recommends granting summary judgment on Plaintiff's claim for injunctive relief.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 34) be **granted in part and denied in part** as follows:

1.  **Granted** as to all claims against Defendant Fischer, who should be dismissed from this action;

2.  **Granted** as to all claims against Defendant (Hubbard) Simmons who should be dismissed from this action;

3.  **Denied** in part as to Defendant Bullis solely on the claim that he is alleged to have violated the Plaintiffs Due Process rights by refusing to call two witnesses; but granted in all other respects; and

4.  **Denied** as to Defendant Prack; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   March 25, 2016
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge